**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TERRY S. FOX,**

    **Petitioner,**

                             **Case No. 2:15-cv-03074**
    **v.**                          **JUDGE ALGENON L. MARBLEY**
                                    **Magistrate Judge King**

**MICHELLE MILLER, WARDEN,**

    **Respondent.**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (ECF No. 1), Respondent's *Return of Writ* (ECF No. 5), Petitioner's *Reply* (ECF No. 6), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that claims three and four be **DISMISSED**.

Respondent is **DIRECTED** to file a copy of the trial transcripts within twenty-one (21) days in order to assist the Court in resolving Petitioner's remaining claims.

Petitioner's *Motion for Discovery* (ECF No. 17) is **DENIED**.

**Facts and Procedural History**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On January 11, 2013, the Licking County Grand Jury indicted Appellant on one count of gross sexual imposition, in violation of R.C. 2907, 05(A)(4), a felony of the third degree; and one count of intimidation of witness in criminal case, in violation of R.C. 2921.04(B)(2), a felony of the third degree. Appellant entered a plea of not guilty to the Indictment. The matter proceeded to jury trial on June 11–12, 2013.

The following evidence was adduced at trial.

Chasity Miller is the mother of A.M., the victim. Miller explained her daughter is ten years old and is "mentally retarded." A.M. has difficulty verbally communicating and is in a multi-handicapped classroom in school. Miller testified her mother, Kay Spires, lives nearby. Miller added Appellant and Spires have been in a relationship for nine years and Appellant lived with Spires.

One Sunday in December, 2012, Miller, her husband, and four children went to Spires' home to have dinner and watch football. Appellant and A.M. were alone in a bedroom on two or three occasions during the afternoon.

While on the telephone with Spires on or about New Year's Day, 2013, Miller heard Appellant in the background remarking A.M. "wanted it" and A.M. loves him. Miller also heard Appellant tell Spires A.M. had grabbed his hand and put it between her (A.M.'s) legs. After the telephone call ended, Miller took A.M. into the bathroom and asked her if anyone had ever touched her. Miller described A.M.'s reaction to the question as sad, scared, and confused. Miller asked A.M. a second time if anyone had ever touched her. A.M. responded, "Yes," stated Appellant had touched her, and pointed to her vaginal area. Miller subsequently contacted the police.

Kay Spires testified Appellant had lived with her for three or four years. Spires indicated Miller's children, including A.M., thought of Appellant as their grandfather. Spires recalled she telephoned Miller to wish her "Happy New Year." While she was on the phone, Appellant told her A.M. had grabbed his hand and placed it between her (A.M.'s) legs, and A.M. wanted it. Spires admitted she still loves Appellant. After reviewing the statement she made to police on January 2, 2013, Spires acknowledged she told police Appellant had threatened to kill her if she opened her mouth, but added she was drunk and would have said anything. Spires acknowledged she told police Appellant had told her he had rubbed A.M.'s vagina, but insisted Appellant never made such an admission to her.

Catherine R. Wohlford, a certified nurse practitioner, testified she specializes in pediatrics, and diagnoses sexual abuse. Wohlford recalled in early January, 2013, she examined A.M. Wohlford indicated A.M. was able to properly identify her body parts. A.M. told Wohlford Appellant had touched her on her bad area. Using a

nude anatomical drawing of a prepubescent female, A.M. identified her bad area as the vaginal area.

Detective Clint Eskins of the Newark Police was assigned to investigate the case. Appellant told Det. Eskins A.M. had grabbed his hand and placed it between her legs in the crotch area. Det. Eskins stated Appellant became extremely nervous when he realized that police were speaking with Spires outside of his presence.

After hearing all the evidence and deliberating, the jury found Appellant guilty of both counts of the Indictment. The trial court sentenced Appellant to an aggregate term of imprisonment of six (6) years and classified him a Tier II sexual offender.

It is from this conviction and sentence Appellant appeals, raising the following assignments of error:

"I. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.

"II. THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"III. THE COURT ERRED WHEN IT PERMITTED THE INTRODUCTION OF IMPERMISSIBLE HEARSAY EVIDENCE.

"IV. THE APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL."

*State v. Fox,* No. 13-CA-71, 2014 WL 1520665, at *1-2 (Ohio App. 5th Dist. April 16, 2014).

On April 16, 2014, the appellate court affirmed the judgment of the trial court. *Id*. On September 24, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Fox,* 140 Ohio St.3d 1439 (Ohio 2014).

On December 2, 2014, Petitioner filed a *pro se* petition for post conviction relief in the state trial court. He asserted that police lacked probable cause for his arrest in violation of the Fourth Amendment; that he was denied his right to subpoena defense witnesses; that he was denied his right to the effective assistance of counsel because his attorney failed to subpoena

witnesses, failed to file a petition for a writ of habeas corpus for Petitioner's release, failed to move for a mistrial due to the improper admission of evidence, and failed to move for judgment of acquittal; and that the authorities improperly failed to disclose all of the evidence against him. (Doc. 5-1, PageID# 157-160.)  Apparently, the trial court has not issued a ruling on that petition.

On October 5, 2015, Petitioner filed an application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B).  (Doc. 5-1, PageID# 162.)  On October 20, 2015, the appellate court denied that application as untimely.  (PageID# 170.)  The record does not reflect that Petitioner filed an appeal from that decision.  On December 11, 2015, Petitioner filed a second Rule 26(B) application.  (PageId# 174.)  Apparently, the state appellate court has not ruled on that second Rule 26(B) application.

Petitioner filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 11, 2015,.  He alleges that the evidence was constitutionally insufficient to sustain his convictions (claim one); that he was denied the effective assistance of counsel (claim two); that he was convicted in violation of the Fourth Amendment because he was arrested without probable cause or a search warrant (claim three); and that he was denied a fair trial because of prosecutorial misconduct (claim four).  Respondent contends that Petitioner's claims are procedurally defaulted or without merit.

**Motion for Discovery**

Petitioner has filed a motion for discovery in connection with his claim that he was denied the effective assistance of trial counsel based on his attorney's failure to call one Mike Miller as an "alibi witness."  According to Petitioner, this testimony could have exonerated him, (Doc. 17, PageID# 226), because Mike Miller was present during the time of the events at issue and would have established that Petitioner was never alone with the alleged victim and did not

commit, or could not have committed, the acts alleged.  *Reply* (ECF No. 6, PageID# 198, 201.)
In support of this contention, Petitioner proffers what appears to be a portion of the trial
transcript in this case, indicating that a prosecution witness – otherwise unidentified - had
testified in relevant part that, "Terry and the kids and Mike was out back," and they came in to
watch the football game in the bedroom.  *Motion for Discovery* (Doc. 17, PageID# 227-28.)
"They go back outside, come back in.  That was going on and on all day just about."  *Id*.
Petitioner and the alleged victim were alone in the bedroom perhaps two or three times
throughout the afternoon.  *Id*.

Petitioner also proffers a document that purports to be a summary of a police interview of
"Mike" by Officer Clint Eskins.  *Id*. (PageID# 229.)  That document indicates that Mike told
police that he had gone outside at some point during the afternoon of the day at issue, while the
alleged victim remained inside the house.  *Id*.

> CE [Officer Eskins]:  Do you know where she was at inside?
>
> M ["Mike"]:  Well she was in the, the dining room part.  She is
> sitting in there, there's Terry, he's sitting in the bedroom watching
> the football game, and she went in there to see what he was doing.
> She was curious, and I was still out back.  When I came in, she was
> in there sitting on the bed watching the football game.  And I
> thought whatever I mean you know there wasn't room to sit down.
> Then we sit down with them, we ate dinner.

*Id*.  Mike did not observe any inappropriate activity.  *Id*.  The alleged victim was with Terry
watching football for approximately 45 minutes.  *Id*. (PageID# 230.)  The door was open.  *Id*.
She was sitting close to Petitioner.  *Id*.  "[H]e [the Petitioner] favored her too much. . . . [H]e
called her his little princess."  *Id*.

The discovery processes authorized by the Federal Rules of Civil Procedure do not
automatically apply to habeas corpus proceedings.  "A judge may, for good cause, authorize a

party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent

of discovery." Rule 6 of the Rules Governing Section 2254 Cases in the United States District

Courts. Under this "good cause" standard, a district court should grant leave to conduct

discovery in habeas corpus proceedings only "'where specific allegations before the court show

reason to believe that the petitioner may, if the facts are more fully developed, be able to

demonstrate that he is. . . entitled to relief. . . .'" *Bracy v. Gramley*, 520 U.S. 899, 908-09

(1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). *See also Stanford v. Parker*, 266

F.3d 442, 460 (6th Cir. 2001).

> "The burden of demonstrating the materiality of the information
> requested is on the moving party." *Stanford,* 266 F.3d at 460. Rule
> 6 does not "sanction fishing expeditions based on a petitioner's
> conclusory allegations." *Rector v. Johnson*, 120 F.3d 551, 562 (5th
> Cir. 1997); *see also Stanford*, 266 F.3d at 460.
>
> "Conclusory allegations are not enough to warrant discovery under
> [Rule 6]; the petitioner must set forth specific allegations of fact."
> *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

*Williams v. Bagley*, 380 F.3d 932, 975 (6th Cir. 2004).

Moreover, Rule 7 of the Rules Governing Section 2254 Cases in the

United States District Courts provides:

> (a) In General. If the petition is not dismissed, the judge may direct
> the parties to expand the record by submitting additional materials
> relating to the petition. The judge may require that these materials
> be authenticated.
>
> (b) Types of Materials. The materials that may be required include
> letters predating the filing of the petition, documents, exhibits, and
> answers under oath to written interrogatories propounded by the
> judge. Affidavits may also be submitted and considered as part of
> the record.
>
> (c) Review by the Opposing Party. The judge must give the party
> against whom the additional materials are offered an opportunity to
> admit or deny their correctness.

This rule permits federal habeas courts to direct the parties to supplement the state court record with materials relevant to the Court's resolution of the petition. The decision whether to order an expansion of the record under Rule 7, however, falls within the sound discretion of the district court. *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988). Expansion of the record pursuant to Rule 7 is limited by the relevance of the proffered materials to the constitutional claims presented.

Petitioner has failed to establish good cause for his discovery request. As an initial matter, Petitioner does not specify the nature of the discovery that he seeks. Moreover, the documents that he has attached to his discovery request do not support his claim that Mike Miller could have provided evidence exculpatory to the defense. His insistence that further discovery in connection with this proposed witness will assist him in establishing that he was denied the effective assistance of trial counsel is based entirely on speculation and constitutes a mere fishing expedition. Under these circumstances, Petitioner's *Motion for Discovery* (ECF No. 17) is **DENIED.**

**Procedural Default**

Respondent contends that Petitioner's third and fourth claims for relief are procedurally defaulted. *Return of Writ* (ECF No. 5, PageID# 25-28). Congress has provided that state prisoners who claim that they are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). However, in recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the

7

state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982 (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman* v. *Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" describes the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State such that the State has been denied a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that, if the claims are not presented to the state courts in the way that state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)("[C]ontentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case - that is, they are "procedurally defaulted.")

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim has been waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the court determines that a state procedural rule was not met, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In order to establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause sufficient to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 479). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if

the claim of ineffective assistance of counsel is itself procedurally defaulted, the petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards,* 529 U.S. at 450–51. The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S. at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting *id*., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id*., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it may not consider the merits of the procedurally defaulted claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the

petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. at 495–96).

In claim three, Petitioner alleges that police illegally arrested him in violation of the Fourth Amendment. In claim four, Petitioner alleges that he was denied a fair trial because of prosecutorial misconduct. Petitioner failed to raise either of these claims on direct appeal. Further, he may now no longer do so by operation of Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule due to the nature of Petitioner's procedural default.

Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964) *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001);

*Seymour* v. *Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner maintains that he presented claim three in his petition for post conviction relief; however, on-the-record claims, such as Petitioner's allegation regarding a violation of the Fourth Amendment, must be raised on direct appeal, and are not properly presented to the state courts by way of a petition for post conviction relief. *See Moreland v. Bradshaw,* 645 F.Supp.2d 680, 712 (S.D. Ohio 2009):

> Claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata.* [*Stojetz v. Ishee,* 389 F.Supp.2d 858, 882-83 (S.D.Ohio 2005)], citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). Issues that must be raised in a post-conviction action pursuant to Ohio Rev.Code § 2953.21 include claims that do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial. *Stojetz, supra,* citing, *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982).

*Id.* Moreover, even assuming, *arguendo*, that Petitioner properly preserved this claim for federal habeas corpus review, it does not provide him a basis for relief.

12

Generally, habeas corpus relief cannot be based on an alleged violation of the Fourth Amendment, so long as the petitioner had an opportunity to present the claim to the state courts. *Stone v. Powell*, 428 U.S. 465, 482 (1976); *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)(opportunity for full and fair litigation of a Fourth Amendment claim exists where the state procedural mechanism presents an opportunity to raise the claim, and presentation of the claim was not frustrated by a failure of that mechanism.)

> One, the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty. [*Stone v. Powell*], at 490, 96 S.Ct. 3037. Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution. Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great. *Id*. at 493, 96 S.Ct. 3037.

*Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013).  Ohio permits a criminal defendant to file a motion to suppress evidence prior to trial. *See* Ohio R. Crim. P. 12(C)(3).  Further, there is no basis in the record upon which to find that Petitioner was unable to present a claim under the Fourth Amendment because of a failure of Ohio's procedural mechanism.  Therefore, Petitioner's claim regarding the violation of the Fourth Amendment does not provide a basis for federal habeas relief.  *See Davis v. Morgan*, No. 2:15-cv-00613, 2016 WL 6493420, at *9 (S.D. Ohio Nov. 2, 2016).

Petitioner has also procedurally defaulted claim four for federal habeas corpus review because he failed to present that claim to the state courts on direct review and, as discussed *supra*, he may now no longer do so.

Petitioner may still secure review of the merits of his claims three and four if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. As cause for his procedural default, Petitioner

asserts the denial of the effective assistance of appellate counsel.  As noted *supra*, the constitutionally ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. at 451-52.   Here, however, Petitioner has procedurally defaulted his ineffective assistance of appellate counsel claim.  The state appellate court explicitly denied Petitioner's Rule 26(B) application for failure to establish good cause for filing the application more than 18 months late.  (Doc. 5-1, PageID# 172).  Consequently, the first and second parts of *Maupin* test have been met with respect to this claim. Further, the Sixth Circuit has recognized that the timeliness requirement of Ohio Appellate Rule 26(B) is an adequate and independent state ground for relief.  *Fautenberry v. Mitchell*, 515 F.3d 614 (6th Cir. 2008).

As cause for his default of his ineffective assistance of appellate counsel claim, Petitioner asserts his *pro se* incarcerated status, the time constraints under which he was operating, and his limited access to legal materials.   Petitioner also specifically complains that his appellate attorney did not timely provide him access to the trial transcripts.  *Reply* (Doc. 6.)

"[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default."  *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)).  A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).  Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him."  *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007).

Petitioner has failed to establish cause for his procedural default.  His *pro se*, incarcerated status, and even his limited access to legal materials and the prison's law library, simply do not constitute cause sufficient to excuse his failure to file a timely Rule 26(B) application. Similarly, his alleged difficulty in obtaining a copy of his trial transcripts does not excuse his untimely filing.  *See Abreu v. Huffman*, 27 Fed.Appx. 500, 505, unpublished, 2001 WL 1480743 (6th Cir. 2001)(citations omitted).  Further, Petitioner also failed to file a timely appeal to the Ohio Supreme Court and he may now no longer do so, because Ohio does not permit delayed appeals in Rule 26(B) applications.  S.Ct.Prac.R. 7.01(A)(4)(c). The state courts were therefore unable to enforce this procedural rule because of the nature of Petitioner's procedural default.

Therefore, the claimed ineffective assistance of appellate counsel cannot constitute cause sufficient to excuse petitioner's procedural default of his claim of prosecutorial misconduct.

The United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims."  *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995).  "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  *Murray*, 477 U.S. at 496.  In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition.  *Schlup*, 513 U.S. at 317.  However, the actual innocence claim is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"  *Id*. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence – not previously presented at trial – would allow no reasonable juror to find him guilty beyond a reasonable doubt.  *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005).  The Court of Appeals for the Sixth Circuit explained the exception as follows*:*

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards here. After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve petitioner of his procedural default.

## Claims One and Two

In claim one, Petitioner alleges that the evidence is constitutionally insufficient to sustain his convictions.  In claim two, Petitioner alleges that he was denied the effective assistance of

16

counsel because his attorney failed to request a motion for judgment of acquittal based on the lack of evidence against him, failed to call a defense witness, and failed to explain the charges against him or to protect his rights during the state court proceedings.  Respondent argues that these claims are without merit.  The Court concludes that its review of the trial transcript is necessary to the resolution of these claims. However, Respondent has not filed the trial transcript with this Court.  The Court is therefore unable to resolve claims one and two in the absence of the trial transcript.  Respondent is therefore **ORDERED** to file a trial transcript within twenty-one (21) days of the date of this *Order and Report and Recommendation*.

Therefore, the Magistrate Judge **RECOMMENDS** that claims three and four be **DISMISSED**.

Because a review of the trial transcript is necessary to this Court's resolution of claims one and two, Respondent is **ORDERED** to file a copy of the trial transcript within twenty-one (21) days of this *Order and Report and Recommendation*.

Petitioner's *Motion for Discovery* (Doc. 17) is **DENIED.**

### Procedure on Objections

If any party objects to this *Order and Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendati*on will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


   *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
January 5, 2017