IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TERRY S. FOX,**

    Petitioner,

    v.                                  Case No. 2:15-cv-3074
                                                JUDGE ALGENON L. MARBLEY
                                                Magistrate Judge King

**MICHELLE MILLER, WARDEN,**

    Respondent.

**REPORT AND RECOMMENDATION**

    Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The *Petition* (ECF No. 1) presents four (4) claims for relief. On January 5, 2016, the undersigned recommended that claims three and four be dismissed and directed that Respondent file a copy of the trial transcripts in order to assist the Court in resolving claims one and two. *Order and Report and Recommendation* (ECF No. 18).[1] Respondent thereafter file a copy of the trial and sentencing transcripts. *Notice* (ECF No. 19). For the reasons that follow, the undersigned now **RECOMMENDS** that claims one and two be **DISMISSED**.

**Facts and Procedural History**

    This case arises out of Petitioner's June 2013 convictions, following a jury trial in the Licking County Court of Common Pleas, on charges of gross sexual imposition and intimidation of a witness in a criminal case. The facts and procedural history are detailed in the Court's January 5, 2017, *Order and Report and Recommendation* (ECF No. 18), and will not be repeated

---

[1] Petitioner's objection to that recommendation remains pending. *Objection* (ECF No. 20).

here. In claims one and two, Petitioner alleges that the evidence was constitutionally insufficient to sustain his convictions and that he was denied the effective assistance of counsel.

## Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state court determinations. The AEDPA is "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court;" federal courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, — U.S. —, —, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Moreover, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. §

2254(d)(1), (2). The United States Court of Appeals for the Sixth Circuit has explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular...case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards of § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409, and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered

and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 Fed.Appx. 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based only on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

## Insufficiency of the Evidence

In claim one, Petitioner alleges that the evidence was constitutionally insufficient to sustain his convictions. The state appellate court rejected this claim as follows:

> One Sunday in December, 2012, [Chastity] Miller, her husband, and four children went to [Kay] Spires' home to have dinner and watch football. Appellant and A.M. were alone in a bedroom on two or three occasions during the afternoon.[2]
>
> While on the telephone with Spires on or about New Year's Day, 2013, Miller heard Appellant in the background remarking A.M. "wanted it" and A.M. loves him. Miller also heard Appellant tell Spires A.M. had grabbed his hand and put it between her (A.M.'s) legs. After the telephone call ended, Miller took A.M. into the bathroom and asked her if anyone had ever touched her. Miller described A.M.'s reaction to the question as sad, scared, and confused. Miller asked A.M. a second time if anyone had ever touched her. A.M. responded, "Yes," stated Appellant had touched her, and pointed to her vaginal area. Miller subsequently contacted the police.
>
> Kay Spires testified Appellant had lived with her for three or four years. Spires indicated Miller's children, including A.M., thought of Appellant as their grandfather. Spires recalled she telephoned Miller to wish her "Happy New Year." While she was on the phone, Appellant told her A.M. had grabbed his hand and placed it

---

[2] Chastity Miller is the victim's mother; Kay Spires is the victim's grandmother and was Petitioner's domestic partner. *See State v. Fox*, No. 13-CA-71, 2014 WL 1520665, at *1 (Ohio App. 5th Dist. April 16, 2014).

4

between her (A.M.'s) legs, and A.M. wanted it. Spires admitted she still loves Appellant. After reviewing the statement she made to police on January 2, 2013, Spires acknowledged she told police Appellant had threatened to kill her if she opened her mouth, but added she was drunk and would have said anything. Spires acknowledged she told police Appellant had told her he had rubbed A.M.'s vagina, but insisted Appellant never made such an admission to her.

Catherine R. Wohlford, a certified nurse practitioner, testified she specializes in pediatrics, and diagnoses sexual abuse. Wohlford recalled in early January, 2013, she examined A.M. Wohlford indicated A.M. was able to properly identify her body parts. A.M. told Wohlford Appellant had touched her on her bad area. Using a nude anatomical drawing of a prepubescent female, A.M. identified her bad area as the vaginal area.

Detective Clint Eskins of the Newark Police was assigned to investigate the case. Appellant told Det. Eskins A.M. had grabbed his hand and placed it between her legs in the crotch area. Det. Eskins stated Appellant became extremely nervous when he realized that police were speaking with Spires outside of his presence.

\*\*\*

Appellant contends his convictions were not supported by the sufficiency of the evidence. . . .

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus.

In reviewing the legal sufficiency of the evidence to support a verdict by the trier of fact, it is the mind of the trier of fact, rather than the reviewing court, that must be convinced. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982). In applying this standard of review, the question of credibility of conflicting

5

testimony and the weight to be accorded certain evidence are matters left primarily to the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

A reviewing court should not disturb the decision below unless it finds that reasonable minds could not reach the conclusion reached by the trier of fact. *Jenks, supra*, 61 Ohio St.3d at 273.

\*\*\*

Appellant was convicted of gross sexual imposition, in violation of R.C. 2907.05, which reads:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

\* \* \*

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

\* \* \*

(B) No person shall knowingly touch the genitalia of another, when the touching is not through clothing, the other person is less than twelve years of age, whether or not the offender knows the age of that person, and the touching is done with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

R.C. 2907.01(B) defines "sexual contact" as follows:

(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

Appellant argues the State failed to prove he purposefully engaged in sexual contact with A.M. Specifically, Appellant claims he did not act purposefully as A.M. initiated the contact by placing his hand in her lap, and the direct evidence did not establish the touching was done for sexual gratification. Appellant maintains the

6

only evidence of touching was that of his hand on A.M.'s lap as the result of A.M. placing it there. We disagree.

A.M. told Wohlford, the nurse practitioner, someone touched her bad area, and, on an anatomical drawing, indicated her bad area was her vaginal area. A.M. identified Appellant as the individual who touched her. Further, although she tried to discredit it at trial, in her statement to police, Spires indicated Appellant admitted he had rubbed around A.M.'s vagina. Additionally, when speaking with Spires on the telephone, Miller heard Appellant yelling A.M. "wanted it". A.M. was ten years old at the time and she has developmental disabilities.

"While the purpose of sexual arousal or gratification is an essential element of the offense of gross sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification. * * * In determining the defendant's purpose, the trier of fact may infer what the defendant's motivation was in making the physical contact with the victim. *State v. Smith*, 5th Dist.App. No.2008CA00097, 1009–Ohio–1759 at para. 45. (Citations omitted.)

After reviewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of gross sexual imposition proven beyond a reasonable doubt. Accordingly, we overrule Appellant's first assignment of error as it relates to the GSI conviction. Because there was sufficient evidence to support the gross sexual imposition conviction, Appellant cannot demonstrate any prejudice from trial counsel's failure to raise a Crim.R. 29 motion for acquittal; therefore, cannot demonstrate ineffective assistance of counsel. We overrule Appellant's fourth assignment of error as it relates to the GSI conviction.

. . .Appellant also challenges the sufficiency of the evidence with respect to his conviction for intimidation[.]

R.C. 2921.04(B)(2) provides:

(B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons: * * *

(2) A witness to a criminal or delinquent act by reason of the person being a witness to that act.

7

> Appellant maintains he could not be convicted of intimidation of a witness because Spires was not a witness to the alleged offense as she did not see what occurred between himself and A.M. Appellant's assertion has no merit.
>
> As used in R.C. 2921.04(E), the term "witness" means "any person who has or claims to have knowledge concerning a fact or facts concerning a criminal or delinquent act, whether or not criminal or delinquent child charges are actually filed." Appellant further submits because Spires was intoxicated when she gave her statement to police and she was the sole witness to the alleged intimidation, there was insufficient evidence to support the conviction. Spires' alleged intoxication goes to her credibility, not her competency to be a witness. Spires clearly was a witness with respect to Appellant's statements regarding his contact with A.M.
>
> After reviewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of intimidation proven beyond a reasonable doubt. Accordingly, we overrule Appellant's first assignment of error as it relates to the intimidation conviction.

*State v. Fox*, No. 13-CA-71, 2014 WL 1520665, at *1-6 (Ohio App. 5th Dist. April 16, 2014).

A claim of insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). In order for a conviction to be constitutionally sound, every element of the crime must have been proven beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

8

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). This rule has been recognized in Ohio. *State v. Jenks*, 61 Ohio St.3d 259 (1991). Of course, it is state law that determines the elements of an offense. Once the state has adopted the elements of the offense, the state must then prove each of those elements beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

The AEDPA requires two levels of deference to state decisions addressing a claim of sufficiency of the evidence: one to the trier of fact's verdict under *Jackson v. Virginia*, and a second to the appellate court's consideration of that verdict. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, —, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' +" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. —, —, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. —, —, 132 S.Ct. 2060, 2062 (2012)(*per curiam*). *See also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). This hurdle is a difficult one to surmount and the Court is not persuaded that Petitioner has done so here.

Petitioner argues that the evidence failed to establish that he committed the act of gross sexual imposition or knowingly threatened Spires, because Spires was drunk when she spoke to police, police provoked her response, the evidence established only that the alleged victim

9

initiated contact of holding hands with the Petitioner, and it was the police who wrote Miller's statement to contain the allegations against him. *Petition* (ECF No. 1, PageID# 4). Petitioner also refers to a lack of physical evidence and maintains that the evidence failed to establish that he was ever alone with the alleged victim. *Reply* (ECF No. 6, PageID# 196).

These arguments are not persuasive. Chastity Miller testified that Petitioner was alone with her daughter, the victim, on several occasions during the day at issue, in the bedroom watching football. *Trial Transcript* (ECF No. 19-1, PageID# 339-40). During a telephone conversation with her mother, Kay Spires, on New Year's Day, Miller heard the Petitioner in the background talking about how her daughter "wanted it" and "love[d] him." (PageID# 344). Petitioner said that the victim had grabbed his hand and had placed it between her legs. (PageID# 345-47). Her daughter stated that Petitioner had touched her in her private parts, pointing to her vagina. (PageID# 350). Kay Spires denied that Petitioner was alone with the alleged victim for more than "[m]aybe a few seconds." (PageID# 367-68). Petitioner told Spires that the child had grabbed his hand and had tried to place it between her legs. (PageID# 369). In Spires' taped statement to police, she indicated that Petitioner was going to "kill" her if she opened her mouth, but she explained at trial that she was drunk and would have said anything. (PageID# 372-73). She told police that she intended to leave the state because she did not want to testify. (PageID# 373). She denied that he had threatened her. (PageID# 378). The victim told Catherine Wohlford, a nurse practitioner, that Petitioner had touched her vaginal area with his hand at her grandmother's house. (PageID# 391-92). Petitioner told Detective Clint Eskins that the child had taken his hand and had tried to put it between her legs. (PageID# 415). She had then taken his hand and had asked him to take her upstairs. (PageID# 416).

When viewing all of the evidence in the light most favorable to the prosecution, and applying the deferential standard of review required under the AEDPA, this Court is not persuaded that Petitioner has established that the evidence was constitutionally insufficient to sustain his convictions or that this claim warrants federal habeas corpus relief.  Moreover,

> the Supreme Court has held that "[c]ircumstantial evidence . . . is intrinsically no different from testimonial evidence," and that it is sufficient as long as the jury is convinced beyond a reasonable doubt. *See Holland*, 348 U.S. at 140, 75 S.Ct. 127; *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (stating that "we have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required"). The *Jackson* standard does not require the Warden to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781.

*Gipson v. Sheldon*, 659 Fed.Appx. 871 (6th Cir. 2016).  A "lack of physical evidence does not render the evidence presented insufficient; instead it goes to weight of the evidence, not its sufficiency. . . . [A]s noted, it is clearly established that a jury's verdict may be based entirely on circumstantial evidence."  *Id.* (citing *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005); *Holland*, 348 U.S. at 139–40; *Desert Palace, Inc.*, 539 U.S. at 100).

For the reasons articulated by the state appellate court, Petitioner's claim of insufficiency of the evidence is without merit.

## Ineffective Assistance of Counsel

In claim two, Petitioner alleges that he was denied the effective assistance of counsel because his attorney failed to move for a judgment of acquittal, failed to call one "Mike Miller" as a defense witness, generally failed to protect his rights at trial, and failed to explain the charges against him.  *Petition* (ECF No. 1, PageID# 6).

11

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To establish the second prong of the *Strickland* test, *i.e*., prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

Applying the two-prong test set forth in *Strickland,* the state appellate court rejected Petitioner's claim that he had been denied the effective assistance of counsel based on his attorney's failure to request a judgment of acquittal of the charges, concluding that the state had presented constitutionally sufficient evidence of Petitioner's guilt, and that any such request would therefore not have been successful. *State v. Fox*, 2014 WL 1520665, at *2-5. As

previously discussed, the record supports that conclusion, and Petitioner has therefore failed to establish the denial of the effective assistance of counsel on this basis.

Further, Petitioner does not refer to, and the record does not indicate, any specific manner in which his attorney performed in a constitutionally ineffective manner at trial, thereby resulting in prejudice to him. The record is utterly without support for Petitioner's allegation that any witness could have provided exculpatory evidence for the defense.

Petitioner has failed to establish the denial of the effective assistance of counsel.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that claims one and two be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

    *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
January 23, 2017